IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SLSB, LLC,** | |
| **Plaintiff,** | |
| v. | Case No. 3:19-CV-1099-NJR |
| **FLATIRON GRAHAM JOINT VENTURE,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Plaintiff Flatiron Graham Joint Venture's ("Flatiron") Motion to Stay Proceedings Until Conclusion of Pending Arbitration (Doc. 31) ("Motion to Stay") and Motion to Stay Discovery (Doc. 32) ("Discovery Motion"). For the reasons set forth below, the Court grants the Motion to Stay and finds as moot the Discovery Motion.

### FACTUAL & PROCEDURAL BACKGROUND

This action stems from a contract formed between the parties in 2013 ("Purchase Order") in which SLSB, LLC ("SLSB") agreed to manufacture and sell transmission tower bolts, washers, and nuts ("Widgets") for the use of Flatiron in its performance under a design-build contract (the "Project") with the British Columbia Hydro and Power Authority ("BC Hydro"). The Purchase Order contained an arbitration provision providing that disputes "not involving the Project, such as disputes concerning the parties' rights under this Purchase Order" would be settled in arbitration under the law

of British Columbia (Doc. 32-2 at 10). In the course of the Project, a number of disputes arose between Flatiron and BC Hydro, including a dispute over the Widgets supplied by SLSB. As a result, Flatiron commenced a lawsuit in British Columbia against SLSB, seeking to recover damages related to allegedly defective Widgets. SLSB in turn commenced an arbitration in Missouri against Flatiron seeking to recover amounts which it alleged Flatiron still owed for the Widgets that had been supplied. The parties agreed to submit both disputes to arbitration before the American Arbitration Association in Chicago ("Chicago Arbitration"). In 2017, the parties entered a new agreement to stay the Chicago Arbitration ("Stay Agreement") pending the outcome of a separate arbitration proceeding between Flatiron and BC Hydro (Doc. 32-8). The Stay Agreement provides that the parties may assert the same claims or similar claims to those in the Chicago Arbitration in a subsequent arbitration by providing notice to the other party (*Id.*). After entering the Stay Agreement, the parties then jointly filed to voluntarily dismiss the Chicago Arbitration without prejudice, noting that it might be refiled (Doc. 32-9).

In July 2019, after the conclusion of arbitration between Flatiron and BC Hydro, Flatiron decided to resume proceedings against SLSB, providing notice pursuant to the Stay Agreement (Docs. 32-10, 32-11). In September 2019, SLSB filed a complaint in the Circuit Court of Madison County, Illinois, seeking a declaratory judgment that Flatiron had violated the Stay Agreement (Doc. 1-1). That case was removed to this Court in October 2019 (Doc. 1). In December 2019, SLSB filed an answer to Flatiron's renewed arbitration claim, including as an affirmative defense arguments related to Flatiron's alleged noncompliance with the Stay Agreement. SLSB further

sought a stay in the arbitration, advising arbitrators of its state proceedings and their removal to this Court and indicating that it had filed a motion to stay in this Court (Doc. 32-13). Though no such motion to stay appears to have been filed in this court, the new arbitration panel appears to have stayed renewed arbitration until a determination of arbitrability is made by this Court (Doc. 32-15).

## ANALYSIS

I.     **Motion to Stay Proceedings Until the Conclusion of Pending Arbitration**

        **A. Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the interpretation of arbitration agreements in federal courts. The Supreme Court has explained that "the overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). In light of this purpose, courts have consistently interpreted the FAA as establishing a federal policy favoring the broad validity and enforceability or arbitration agreements. *E.g.*, *id.* at 346; *Kiefer Specialty Flooring v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) ("[S]trong support for the federal policy favoring arbitration exists.").

Sections 3 and 4 of the FAA describe procedures through which federal courts implement arbitration agreements, stating that courts "shall" stay proceedings and order arbitration upon confirming the existence of an enforceable arbitration agreement that covers the dispute at hand. In determining whether parties formed an agreement to arbitrate and agreed to arbitrate particular issues, courts generally should apply ordinary

state-law principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Doubts concerning the scope of arbitrable issues should be resolved by the court in favor of arbitration, and a district court cannot deny a request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring*, 174 F.3d at 909.

Courts within the Seventh Circuit have vacillated between considering a motion to dismiss due to an arbitration clause as properly considered under Rule 12(b)(1), 12(b)(3), or 12(b)(6). *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007). *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005); *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 998–99 (N.D. Ill. 2013). The Seventh Circuit has declined to rule definitively on whether any of these variants is in fact impermissible, further noting that the question might in fact also be considered "entirely separate from the Rule 12(b) rubric." *Cont'l Cas. Co.*, 417 F.3d at 733. Even if considered under Rule 12, there is no precedent to indicate that a motion to dismiss due to an arbitration provision would be subject to the waiver provisions of Rule 12(h). Those provisions seem even less applicable if a party seeks to stay rather than dismiss an action due to an arbitration provision. While the distinction between a stay and a dismissal may seem like mere semantics in an action where all issues are deemed arbitrable, the distinction is in fact a substantive one—were an arbitration to find certain issues unarbitrable, a court would retain jurisdiction to proceed on those issues after the close of the arbitration proceeding, as well as to enforce any orders or injunctions already in

effect prior to the stay. Indeed, for this reason the Seventh Circuit has stated that in most instances "the proper course of action" is to stay rather than dismiss a case when a party invokes an arbitration clause. *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005)).

Even if an argument for waiver under Federal Rule of Civil Procedure 12(h) is not appropriate, a party may still waive its right to arbitration. *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020). Such waiver may be express or implied. *Id.* To infer an implied waiver of a right to arbitrate, a Court must determine that "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 994 (7th Cir. 2011). Relevant factors include whether a party participated in litigation or substantially delayed its request for arbitration and whether the other party was prejudiced by reliance on the behavior of the waiving party. *Id.*

### B. Discussion

In its response to Flatiron's Motion to Stay, SLSB characterizes the Stay Agreement as a settlement agreement, arguing that the stay was "an effort to resolve the parties' claims[.]" (Doc. 36 at 10). In the Stay Agreement, however, the parties clearly did not resolve their claims, instead specifying that all claims were preserved and that arbitration could be renewed upon notice by one of the parties. Thus, Flatiron's renewed arbitration appears have been brought exactly as contemplated by the parties. SLSB's first defense against arbitration is that it seeks to assert defenses based on interpretations of the stay

agreement itself, which it suggests would not be covered by the arbitration provision of the original Purchase Agreement. To the extent that the Stay Agreement itself is a document relating to the parties' rights under the Purchase Agreement and functions merely as a procedural document in arbitration under the Purchase Agreement, it seems to the Court that the arbitration provision of the Purchase Agreement is sufficiently broad to encompass any defenses that SLSB might assert based on the Stay Agreement. But even if that were not the case, the language of the Stay Agreement allowing "the same *or similar*" claims and counterclaims as those in the original arbitration to be brought in renewed arbitration seems to allow for the arbitrability of defenses such as those asserted by SLSB.

Second, SLSB presents a waiver argument in opposing a stay, arguing that Flatiron should have brought its motion to stay in its initial 12(b)(1) motion to dismiss for lack of personal jurisdiction and that Flatiron should have answered the complaint after that motion was denied. The motion is not a motion to dismiss, however, but rather a motion to stay and thus this Rule 12 argument is unavailing.

Rather, the question of waiver must be considered under the general principles applicable to the waiver of a right to arbitrate. Here, the relevant factors are not present, and Flatiron's behavior has not indicated waiver. While Flatiron did not seek to stay pending arbitration in its first substantive motion before this Court, it did so relatively promptly, before any discovery had commenced. Furthermore, the fact that arbitration proceedings had already commenced when SLSB brought this action should have put SLSB on notice as to Flatiron's intent to arbitrate.

SLSB further notes that Flatiron has not answered its complaint, but this argument is unavailing. This Court has substantial discretion to enforce deadlines for motions and answers, and in this instance Flatiron's decision to wait for the outcome of its Motions to Stay before answering the complaint seems a logical means of conserving resources and the Court is inclined to allow it.

In sum, the Court finds that the questions presented by SLSB's complaint are arbitrable, and that Flatiron has not waived its right to arbitration, and that a stay is thus appropriate.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion to Stay (Doc. 31) and **finds as moot** the Discovery Motion (Doc. 32).

**IT IS SO ORDERED.**

**DATED:   June 16, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**